IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ERIK J. FALK,<br>c/o Obed Law Group, PLC<br>111 Oronoco Street<br>Alexandria, VA 22314<br>      Plaintiff,<br>v.<br><br>FAIRFAX COUNTY SCHOOL BOARD,<br>8115 Gatehouse Road, Suite 5400<br>Falls Church, VA 22042<br>SERVE (PPS):<br> Ilene Muhlberg,<br> Clerk of the Board<br> 8115 Gatehouse Drive, Suite 5400<br> Falls Church, VA 22042<br><br>      Defendant. | Civil Action No.: 1:21-cv-117<br><br>COMPLAINT FOR VIOLATIONS OF FEDERAL CIVIL RIGHTS PURSUANT TO THE AMERICANS WITH DISABILITIES ACT, WRONGFUL DISCHARGE PURSUANT TO VA CODE §22.1-307 AND IN VIOLATION OF VIRGINIA PUBLIC POLICY, DEMAND FOR DAMAGES AND JURY TRIAL |

**COMPLAINT**

Plaintiff ERIK J. FALK, by and through undersigned counsel, brings this Complaint against Defendant FAIRFAX COUNTY SCHOOL BOARD ("FCSB"), and in support alleges:

**I. NATURE OF THIS ACTION**

1. This is a civil action against FCSB, which governs Fairfax County Public Schools ("FCPS") as FCPS's legal entity, brought pursuant to:

A) The Americans with Disability Act ("ADA") prohibiting discrimination against an employee on the basis of a disability, 42 U.S.C. §12112; 29 CFR §1630.9. Defendant FCSB knowingly, or with reckless indifference to Plaintiff's rights, discriminated against Mr. Falk by: 1) Failing to make a reasonable accommodation for Mr. Falk's disability (attention deficit and hyperactivity disorder ("ADHD")) and by failing to even engage in the interactive process; 2) Placing Mr. Falk on administrative leave on account of his disability and in retaliation for seeking

1

reasonable accommodation, under a pretext unsupported by fact; and 3) Ultimately terminating Mr. Falk's employment, on account of his disability, under a pretext unsupported by fact. *See also* Va. Code §22.1-295.2(B); Virginians with Disabilities Act ("VDA"), Va. Code §51.5-41 (1985).

B) FCSB's due process protections of Mr. Falk's employment rights pursuant to Va. Code §22.1-308 (grievance procedure); Va. Code §22.1-307 (grounds for termination). FCSB's decision to terminate Mr. Falk's employment was arbitrary, capricious, unsupported by facts and findings, and was without cause in contravention of Mr. Falk's rights as a FCPS employee with rights of due process pursuant to Virginia law and the 14th Amendment as applicable to Virginia.

C) Virginia's common law prohibiting an employer's wrongful termination of its employee in violation of the public policy, namely: 1) FCSB's obligation to keep, maintain, and preserve adequate business records pursuant to Va. Code Va. Code §15.2-2509; and §30-137(B); 2) FCSB's obligation not to trespass chattels of Mr. Falk, who was unduly deprived of his property; and 3) FCSB's obligation not to assert conversion over Mr. Falk's property, all of which were directly related to FCSB's decision to terminate Mr. Falk's employment.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. §1343, 38 U.S.C. § 4323(b), and supplemental jurisdiction over the claims arising under Virginia law pursuant to 28 U.S.C. §1367.

3. The United States District Court for the Eastern District of Virginia is a proper venue for this action under 38 U.S.C. § 4323(c)(2) because FCSB governs the Fairfax County Public Schools, which are located in Fairfax County, Virginia in this judicial district. Additionally, venue is proper under 28 U.S.C. § 1391(b) because all or a substantial part of the events giving rise to this action occurred in this district.

4. This action arose in Fairfax County, Virginia; therefore, pursuant to Local Rule 3(C) it should be assigned to the Alexandria Division.

5. Mr. Falk has fully exhausted his administrative remedies as he previously filed an EEOC complaint, Charge Number 570-2020-02002 (a true and accurate copy of which is attached as "Exhibit A"), after which the EEOC issued a "Dismissal and Notice of Rights" and "Notice of Suit Rights" letter to Mr. Falk's then counsel, mailed and emailed on November 3, 2020 notifying Mr. Falk of his right to file his ADA claim in federal court within ninety (90) days of receipt (a true and accurate copy of the letter is attached as "Exhibit B").

6. Upon information and belief, all statutory conditions precedent to the initiation of this lawsuit have been fulfilled, or equitably complied with.

### III. PARTIES

7. FCSB is located at 8115 Gatehouse Road, Suite 5400, Falls Church, VA 22042.

8. FCSB governs the FCPS system, which includes Centreville High School located at 6001 Union Mill Road, Clifton, VA 20124, where Mr. Falk was employed as an auto tech teacher at the relevant times of the facts giving rise to this action.

9. FCPS is a Virginia state employer with more than 15 employees.

10. Mr. Falk, a resident of Manassas, VA, had been an employee of FCPS since 2011 as an auto tech teacher in the Career and Technical Education ("CTE") program until the end of his employment with FCPS.

11. Mr. Falk worked for FCPS at George C. Marshall High School at 7731 Leesburg Pike, Falls Church, VA 22043 ("Marshall High School") from 2011 until June of 2018, when Mr. Falk transferred to Centreville High School.

### III. FACTS COMMON TO ALL COUNTS

12. Mr. Falk successfully performed his duties as an auto tech teach at Marshall High School throughout his tenure there, earning regard in the community for his teaching and for his positive role in the school community.

13. Mr. Falk has successfully performed his job duties despite having ADHD.

14. Mr. Falk's ADHD substantially limits, and has limited, one or more of his major life activities, namely, but not limited to concentrating, thinking, communicating, and reading.

15. At age 2, Mr. Falk was diagnosed with a developmental delay such that by pre-school Mr. Falk had special services and accommodations in preschool, carrying over into his schooling at FCPS in kindergarten.

16. Mr. Falk was determined to be Learning Disabled and assigned to special education programs no later than third grade in Fairfax County (circa 1987) continuing in such programs through Mr. Falk's high school schooling.

17. Mr. Falk was officially diagnosed with ADHD over the course of his schooling and life, with a full diagnosis being done in 2005 with a determination of ADHD disability in October of 2005.

18. Mr. Falk's ADHD makes it difficult, and has made it difficult, to keep track of dates and times for meetings, particularly in new and different circumstances or settings such as at the commencement of the 2018-19 school year at Centreville High School, in addition to making it difficult for Mr. Falk to complete other detail-oriented tasks.

19. In June 2018, Mr. Falk transferred to Centreville High School in order to be closer to his home in Manassas, Virginia, once a vacancy opened at Centreville High School.

20. During Mr. Falk's seven years at Marshall High School, he indicated that he had ADHD to administration, faculty, and students of his ADHD disability, and that it limited in some ways his employment and daily life.

21. Mr. Falk pointed out his ADHD disability in his interviews for Marshall High School and for Centreville High School.

22. Mr. Falk shared in his interviews that he was in a special education program when he was a student at FCPS.

23. Mr. Falk told administrators and staff at Marshall High School that he was familiar with and proud of FCPS's support of students with learning disabilities such as his own success working with an ADHD disability under FCPS support programs.

24. Mr. Falk was especially proud to work with students with learning disabilities in his role as an auto tech teacher.

25. The administration and staff at Marshall High School provided reasonable accommodations unique to Mr. Falk, such as Mr. Falk's supervisor Jeff MacFarland providing reminders of scheduled meetings to help Mr. Falk.

26. In Mr. Falk's interview for Centreville High School with Assistant Principal Michael Burch and Mr. Jegals, he stated his ADHD disability so that his supervisors could better understand his overall employment needs. Neither interviewer mentioned any need for a written request for accommodation.

27. Upon starting employment in August of 2018, Mr. Falk worked on setting up his auto tech classroom and preparing for the school year; however, Mr. Falk missed several faculty meetings because of his difficulty focusing on details of meeting times due to his ADHD and new setting.

28. Out of concern for unwittingly missing more meetings or details, Mr. Falk requested a meeting with Mr. Burch to discuss his need for accommodations at school, but Mr. Burch did not respond until Mr. Falk asked him again in passing.

29. After several days, Mr. Burch finally asked for a one-on-one meeting to discuss missing the meeting and some other items.

30. On August 30, 2018 Mr. Burch and Mr. Falk met, where Mr. Falk apologized for his time management and stated he needed extra reminders or other forms of assistance due to his ADHD. Mr. Burch then stated Mr. Falk needed to submit the proper paperwork regarding accommodations for his disability.

31. Mr. Falk mentioned that he was unaware of this form because, at his previous school, within FCPS, Marshall High School provided accommodations for him without official documentation.

32. Mr. Burch stated that if Mr. Falk wanted accommodations at Centreville High School, Mr. Falk would have to officially submit the information to FCPS Human Resources ("HR").

33. Mr. Falk was then ready to submit his paperwork the day after the meeting, but was subsequently placed on administrative leave the morning of August 31, 2018, without explanation as to the reason for being placed on leave.

34. Mr. Burch acknowledged Mr. Falk's verbal request for accommodations but placed Mr. Falk on placed on leave before Mr. Falk could submit the proper paperwork.

35. Mr. Burch, school security, and the School Resource officer came into the middle of Mr. Falk's class, told him to come with them right away, went to an office down the hallway.

36. Mr. Burch informed Mr. Falk that he was being placed on leave and would then need to gather his belongings while the class was in session (students in attendance) under school supervision.

37. Mr. Falk gathered some of his belongings and mistakenly, due to being forced to leave in a rush unexpectedly, and due in part to his ADHD, took a portable air tank which he believed was his, but instead mistakenly took FCPS's portable air tank instead of his own portable air tank which, despite being more expensive and valuable than the school's, looked very similar.

38. That afternoon, hours after being placed on leave, a police officer/school resource officer and a school investigator for the HR department, and two Prince William County police officers (upon information and belief with a body camera) appeared at Mr. Falk's home, being sent at the direction of FCPS, to confront Mr. Falk about property that belonged to the school which FCPS believed Mr. Falk had taken, at which time Mr. Falk realized he had mistakenly taken the wrong portable air tank under nerve-wracking circumstances, as he had intended to take his own portable air tank which looked like the school's portable air tank.

39. Mr. Falk explained that he did not have any of FCPS's property, except for the mistaken portable air tank; after such explanation the envoy from FCPS and the Prince William police retreated from Mr. Falk's residence.

40. While Mr. Falk was on administrative leave, FCPS held onto Mr. Falk's property which had remained at the school, including two vehicles inside the auto shop/classroom and two vehicles outside of the auto/shop/classroom on school grounds/gated parking, various items inside the vehicles, and various automobile shop/automobile classroom materials.

41. Mr. Falk met with FCPS twice in October of 2018 (11th and 16th), where FCPS threatened Mr. Falk with criminal charges, for the first time being informed of any possible reason for being placed on leave, while not allowing Mr. Falk to have an attorney present during the interviews.

42. It was not until December 5, 2018 that FCPS allowed Mr. Falk to pick up his 4 vehicles, but Mr. Falk's property which had previously been inside the vehicles no longer was there. Mr. Falk noticed that numerous items were missing and that the vehicles had body and interior damage, and FCPS requested a list of missing property and estimate of damages to which Mr. Falk complied.

43. After correspondence, FCPS told Mr. Falk that they "found" some of Mr. Falk's missing property (automotive parts and other items) and that he could pick up the property on or around January 2, 2019.

44. Mr. Falk further indicated that other property of his was missing, leading to further correspondence over the course of 2019, such that on or around October 21, 2019 the FCPS Investigator Bill Fulton informed Mr. Falk that no further property was found after purportedly exhausting FCPS's search, the purported exhaustion of the search for missing property confirmed by FCPS on November 5, 2019.

45. During 2019, FCPS' superintendent issued a recommendation of dismissal dated August 2, 2019.

46. A grievance hearing was held November 5, 2019.

47. On December 19, 2019, FCSB, through Division Superintendent Scott Braband, issued an official dismissal notice retroactively effective December 16, 2019.

48. FCSB terminated Mr. Falk's employment alleging that Mr. Falk stole FCPS property, performed unauthorized work on vehicles for his on financial benefit, removed FCPS property from location to another after being told not to remove such property, and likely purchased unauthorized equipment for his own benefit using FCPS funds.

49. FCPS did not produce sufficient records to determine that FCPS owned certain property alleged to have been taken. Additionally, Mr. Falk rebutted each of FCSB's/FCPS's claims, and FCPS did not provide sufficient evidence to substantiate its claims.

50. Consequently, FCPS held onto Mr. Falk's property from August 31, 2018 through January of 2019, without knowledge that additional unreturned/missing property would not be returned until informed of FCPS's closure of a search for the missing property on October 21, 2019.

51. Property that was unreturned by FCPS included, but was not limited to: parts relating to a cooling system overhaul for a Jeep, valve gasket and intake overhaul for an Audi, parts in Volvo, Mazda 5-speed manual transmission, Chevrolet 6-speed manual transmission.

52. FCPS did not provide accounting of the items Mr. Falk was alleged to have taken from FCPS.

53. FCPS did not provide an adequate accounting of items in the auto tech classroom prior to Mr. Falk's arrival, during Mr. Falk's short time at Centreville High School, or during the due process grievance process.

54. Having provided insufficient documentation or accounting of items at FCPS's Centreville High School's auto tech classroom, it appears that FCPS has not adequately kept and maintained sufficient records and accounting of inventory according to generally accepted accounting principles.

55. FCSB held FCPS's inadequate recordkeeping against Mr. Falk, using a lack of recordkeeping to erroneously accuse Mr. Falk of stealing property from FCPS.

56. FCSB held Mr. Falk's property for an unreasonable length of time, such that FCPS damaged Mr. Falk's property and asserted dominion and control over the property.

57. FCPS did not return numerous items of Mr. Falk's to Mr. Falk, such that FCPS assumed control and dominion over Mr. Falk's goods and has yet to relinquish such goods.

58. FCPS's failure to properly account for Mr. Falk's goods and FCPS's goods played a direct role in FCSB's decision to terminate Mr. Falk's employment.

59. At all relevant times, Mr. Falk performed his job with FCPS within the legitimate expectations of FCPS.

V. STATEMENT OF CLAIMS

CLAIMS I-III (facts and damages in common):

(I) UNLAWFUL DISCRIMINATION ON THE BASIS OF A DISABILITY (ADHD) (Administrative Leave and Wrongful Termination); (II) FAILURE TO ACCOMMODATE; and (III) RETALIATION FOR PURSUING ACCOMMODATION; in contravention of 42 U.S.C. §12112 (§12111 et seq.); 29 CFR §1630.9; and the ADA generally (42 U.S.C. §12101 et seq.) (See also Va. Code §22.1-295.2(B); Virginians with Disabilities Act ("VDA"), Va. Code §51.5-41 (1985); FCPS Regulation 1450.4, §4))

60. All prior paragraphs are incorporated herein by reference.

61. FCPS, through FCSB, is a covered entity under 42 U.S.C. §12111(2).

62. Mr. Falk, having ADHD, is a member of the protected class under the ADA.

63. FCPS and supervisors at Centreville High School, were aware of Mr. Falk's ADHD and were aware, or should have been aware, of Mr. Falk's need for reasonable accommodation.

64. While placed on administrative leave, FCPS failed to take steps toward providing reasonable accommodation for Mr. Falk's disability and failed to consider Mr. Falk's ADHD in their investigation.

65. FCPS failed to engage in the interactive process to provide a reasonable accommodation for Mr. Falk's disability after having reason to know of Mr. Falk's need for accommodation.

66. FCPS failed to provide reasonable accommodation for Mr. Falk's ADHD disability, leading to Mr. Falk's difficulty adjusting to the new schedule and comply with the new meeting schedule he faced at the beginning of the 2018-19 school year.

67. FCPS took adverse action against Mr. Falk by placing him on administrative leave August 31, 2018, one day after Mr. Falk reiterated his ADHD disability to Mr. Burch, for which FCPS stated as a pretext that such leave was for non-discriminatory reasons, although the timing of the leave, animus against Mr. Falk evidenced by the lack of patience shown by Mr. Burch for Mr. Falk, and the correlation between Mr. Falk's ADHD and the subject of disciplinary review (missing meetings) was a substantial motivating factor in the adverse employment action.

68. FCSB ultimately terminated Mr. Falk's employment and withdrew his teaching license with FCPS, motivated substantially, or in part, by FCPS's failure to reasonably accommodate Mr. Falk's ADHD and in retaliation for Mr. Falk attempting to seek further reasonable accommodation.

69. As a result of FCSB's unlawful conduct in violation of the ADA, Mr. Falk has suffered a loss of earnings, diminished career opportunities, loss of other benefits of employment in an amount to be proved at trial, and non-economic damages such as reputational harm.

WHEREFORE, Mr. Falk requests:

A. Compensation for all injury and damages suffered by Mr. Falk including, but not limited to, both economic and non-economic damages, in the amount to be proven at trial including back pay, front pay, pre-judgment and post-judgment interest, lost benefits of employment, negative tax consequences of any award, liquidated damages, exemplary damages, and punitive damages as provided by law;

B. Plaintiff's reasonable attorneys' fees, expert fees, and costs as provided by law and 42 U.S.C. §12205;

C. For such equitable relief necessary to make Mr. Falk whole including ordering Defendants to fairly characterize Mr. Falk's record of employment, changing his termination status to a resignation, and appropriately revising any negative employment reports in his record the product of the alleged discrimination herein; and

D. For such other and further relief as this Court deems just and equitable.

## CLAIM IV:

### WRONGFUL DISCHARGE in contravention of Va. Code §22.1-307

70. All prior paragraphs are incorporated herein by reference.

71. FCSB reviewed the action to be taken for Mr. Falk's administrative leave through a due process grievance claim pursuant to Va. Code §22.1-308.

72. FCSB ultimately decided to terminate Mr. Falk's employment pursuant to Va. Code §22.1-307 and rescind his teaching license for FCPS, fully effective August 2, 2019.

73. FCSB's decision to terminate Mr. Falk's employment was clearly erroneous, arbitrary, capricious, unsupported by facts and findings, and was without cause in contravention of Mr. Falk's rights as a FCPS employee with rights of due process pursuant to Virginia law and the 14th Amendment as applicable to Virginia.

74. While Va. Code §22.1-314 discusses jurisdiction within Virginia's Circuit Courts (Fairfax County in this case), it is in the best interests of justice and economy to hear this state claim in federal court, together with the ADA claim herein, as both claims arise under the same operative facts and are substantially related as to the unsupported and pretextual reasons offered for Mr. Falk's dismissal.

75. Mr. Falk suffered damages and injuries as a proximate cause of FCSB's action, including but not limited to salary, career opportunities, and other economic and non-economic losses such as reputational harm.

WHEREFORE, Mr. Falk requests:

A. Compensation for all injury and damages suffered by Mr. Falk including, but not limited to, both economic and non-economic damages, in the amount to be proven at trial including back pay, front pay, pre-judgment and post-judgment interest, lost benefits of employment, negative tax consequences of any award, liquidated damages, exemplary damages, and punitive damages as provided by law;

B. Plaintiff's reasonable attorneys' fees, expert fees, and costs to the extent allowable by law;

C. For such equitable relief necessary to make Mr. Falk whole including ordering Defendants to fairly characterize Mr. Falk's record of employment, changing his

termination status to a resignation, and appropriately revising any negative employment reports in his record the product of the alleged discrimination herein; and

    D.    For such other and further relief as this Court deems just and equitable.

**CLAIMS V-VII (WRONGFUL TERMINATION IN VIOLATION OF VIRGINIA PUBLIC POLICY) (COMMON LAW) (facts and damages in common): (V) Virginia Public Policy for FCPS to maintain and keep adequate records; (VI) Virginia Public Policy for employers not to trespass employee's chattels; and (VII) Virginia Public Policy for individuals or entities not to assert conversion over another's property**

76.    All previous paragraphs are incorporated herein by reference.

77.    Mr. Falk was ultimately terminated August 2, 2019.

78.    Mr. Falk, by and through his counsel at the time, issued FOIA requests upon FCPS, which were responded to over the course of 2019.

79.    The FOIA response did not show adequate accounting for of the property and inventory at FCPS's Centreville High School auto tech shop/classroom, although FCSB, in terminating Mr. Falk's employment, relied upon a presumption that property alleged to have been stolen by Mr. Falk's was actually FCSB's despite the absence of records supporting that presumption.

80.    Mr. Falk did not have reason to know he was terminated against Virginia public policy for public schools to maintain and preserve adequate records and accounting (Count V) until he received a full response to his FOIA request in fall of 2019.

81.    Furthermore, Mr. Falk did not have reason to know he was terminated against Virginia public policy regarding interference with his property rights (Counts VI and VII) until

he had full knowledge of what was not returned, which he was not told until October 21, 2019, such that a claim on these grounds did not begin accruing until October 21, 2019.

82. It is a public policy in Virginia for public schools to keep, maintain, and preserve adequate business records pursuant to Va. Code Va. Code §15.2-2509; and §30-137(B).

83. It is a public policy in Virginia for an employer not to trespass chattels (Common Law Tort) of an employee.

84. It is a public policy in Virginia not to assert conversion (Common Law Tort) over another's property.

85. FCPS unreasonably held onto Mr. Falk's property at time of placing Mr. Falk on administrative leave, such that FCPS held control and dominion over Mr. Falk's property, depriving him of the same.

86. FCPS asserted control and dominion over Mr. Falk's property, and failed to return numerous items to Mr. Falk in January 2019 and thereafter, without justification, cause, or even explanation.

87. Mr. Falk's property was in a substantially different condition than as he left it August 31, 2018, when he picked up his vehicles and belongings in December of 2018 and January of 2019.

88. In deciding to terminate Mr. Falk's employment at FCPS, FCSB based its findings substantially or in part on FCPS's own violations of Virginia public policy, holding FCPS's failure to maintain records against Mr. Falk, while wrongfully depriving Mr. Falk of his property so that FCPS could search for reasons to support its unfounded stance that Mr. Falk stole property from FCPS.

89. As a proximate cause of FCSB's wrongful termination of Mr. Falk, Mr. Falk suffered damages, including but not limited to loss of employment and career opportunities, economic and non-economic damages, and other damages.

WHEREFORE, Mr. Falk requests (common to Counts V-VII):

A. Compensation for all injury and damages suffered by Mr. Falk including, but not limited to, both economic and non-economic damages, in the amount to be proven at trial including back pay, front pay, pre-judgment and post-judgment interest, lost benefits of employment, negative tax consequences of any award, liquidated damages, exemplary damages, and punitive damages as provided by law;

B. For such equitable relief necessary to make Mr. Falk whole including ordering Defendants to fairly characterize Mr. Falk's record of employment, changing his termination status to a resignation, and appropriately revising any negative employment reports in his record the product of the alleged discrimination herein; and

C. For such other and further relief as this Court deems just and equitable.

DATED: February 1, 2021.        ERIK FALK, *Plaintiff*

By Counsel:

OBED LAW GROUP, PLC

By: _____/s/_____
Seth James B. Obed, VSB #82482
OBED LAW GROUP, PLC
111 Oronoco Street
Alexandria, VA 22314
Telephone: (703) 567-4052
Facsimile: (703) 894-4940
Email: sobed@obedlaw.com
**Counsel for Plaintiff**

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38 or any similar rule of law, Plaintiff demands a trial by jury for all causes of action and issues for which trial by jury is available.

By: _____/s/_____
Seth James B. Obed, VSB # 82482